# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

VISION QUEST INDUSTRIES,
INCORPORATED,

    Defendant.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 20-2365 (MJD/KMM)

Chad A. Blumenfield, Assistant United States Attorney, Counsel for Plaintiff.

Elliot Harvey Schatmeier and Naeun Rim, Bird Marella PC, and Joseph T. Dixon, III and John Pavelko, Fredrikson & Byron, PA, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant Vision Quest Industries, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). [Docket No. 17] For the reasons that follow, the Court grants the motion to transfer this case to the United States District Court for the Central District of California.

## II.    BACKGROUND

### A.    Factual Background

1

### 1.     Alleged Kickback Scheme

Defendant Vision Quest Industries, Incorporated ("Vision Quest") is a manufacturer of durable medical equipment, including knee braces.  (First Amended Complaint ("FAC") ¶ 1.)  Vision Quest is a California corporation with its principal place of business in Irvine, California, which is in the Central District of California.  (Id. ¶ 15.)  Its manufacturing facility is located in San Diego County, California, within California's Southern District, where it performs product design, fabrication of knee braces, warehousing, and distribution.  (Knape Decl. ¶ 4.)  The founder, President, and CEO of Vision Quest is James Knape, who resides in Orange County, California, and works at Vision Quest's headquarters in Irvine, both in California's Central District.  (Id. ¶ 2.)

Vision Quest uses sales representatives, including independent sales representatives, to sell its products.  (FAC ¶ 1.)  One such sales representative was Results Laboratories LLC ("Results"), owned and operated by Mathias Berry.  (Id. ¶ 2.)  Berry is a non-practicing chiropractor who recruited chiropractors across the country to open and run Osteo Relief Institutes ("ORI Clinics"), a network of medical clinics specializing in non-surgical treatments for osteoarthritis.  (Id. ¶ 3.)

According to Plaintiff the United States of America ("Government"), from 2011 through 2018, Vision Quest paid Berry and Results kickbacks ranging from 20 to 35 percent of Vision Quest's net revenue on each knee brace ordered by the ORI Clinics. (FAC ¶¶ 3-4.) The ORI Clinics were unaware of this arrangement. (Id. ¶ 5.) Berry and Anti-Gravity Effects, LLC ("AGE") acted as a management company for the ORI Clinics, directing their purchasing and taking approximately 10% of their overall revenue, including brace sales. (Id.)

The ORI Clinics submitted millions of dollars in claims for Medicare reimbursement, particularly focusing on billing Medicare for the most profitable braces, irrespective of patient need. (FAC ¶ 6.) Vision Quest was the exclusive brace supplier for ten to twelve ORI Clinics per year between 2011 and 2018. (Id. ¶ 7.) Vision Quest knew that Berry could direct the ORI Clinics which braces to order. (Id.)

Berry's business partner, David Podell, originated the ORI Clinic kickback scheme with Berry and operated two ORI Clinics. (FAC ¶ 8.) Berry and his companies initially gave Podell a 20% "back end sales fee" on every Vision Quest knee brace Podell ordered. (Id.) Later, Podell switched to a Vision Quest

competitor for braces. (Id.) In 2016, in order to woo Podell back, Vision Quest provided Podell with "free" knee braces as a "rebate." (Id.)

Vision Quest and Berry concealed the nature of their relationship by restricting ORI Clinics from speaking directly with Vision Quest and structuring their contracts to conceal the nature of the kickback arrangement. (FAC ¶¶ 10-11.) Thus, Vision Quest knowingly caused the ORI Clinics to submit false claims to Medicare from January 1, 2013 through December 31, 2018, resulting in a kickback scheme that cost the Medicare program tens of millions of dollars. (Id. ¶ 12.)

### 2. Minnesota-Specific Allegations

The Government alleges that ORI Clinics were located in various states across the United States, including Minnesota, California, Texas, New Jersey, New York, and Illinois. (FAC ¶¶ 61, 122.)

#### a) Pressure to Order Braces

In Minnesota, chiropractors Jeff Lavell and Joseph Biernat operated an ORI Clinic in Maplewood, Minnesota, the Minnesota Arthritis Center ("MAC"), until 2017. (FAC ¶¶ 21, 61; Knape Decl. ¶ 10.) MAC ordered braces and other products from Vision Quest through Results and paid license fees to AGE. (FAC

4

¶ 21.)  When MAC's affiliation with Berry and his entities ended in 2015, it ordered braces directly from Vision Quest until 2017.  (Id. ¶ 21; Knape Decl. ¶ 10.)  Vision Quest pressured Berry and Results to order as many braces as possible and, in turn, Berry and Results pressured ORI Clinics to order as many braces as possible.  (FAC ¶¶ 62-63.)

> For example, on October 1, 2013, [Vision Quest's Lynn] Beaumarchais sent Berry an email, indicating that the September numbers are "not close to where you thought you would be."
>
> The very next week, Berry pressured several ORI chiropractors to increase the number of braces offered to patients.

(FAC ¶¶ 65-66.)  Specifically, Berry sent emails pressuring ORI Clinics in Colorado, Texas, New Jersey, and Minnesota.  (Id. ¶¶ 66-69.)  With regard to Minnesota:

> Berry complained that the opportunity cost of not providing enough braces equated to "5-10 grand last week . . . 20-40K a month [. . .] 240 to 480 a year."  Joe Biernat, one of the chiropractors who controlled the Minnesota operation, responded, "We are pushing out as many as we can.  We would like to do more as well."  Berry then asked to speak with him to see what they could do to "improve the touch points."

(Id. ¶ 69.)

        **b)**      **Poor Quality Photographs for Custom Braces**

"In order to manufacture a custom-fabricated knee brace, Vision Quest asked its customers to send photos of the patients' knees in order to manufacture a brace suited to the patient." (Vision Quest ¶ 93.) In 2013, Berry told a MAC chiropractor that he should "make sure it's explained when [taking] the pictures that once the pictures are taken they have to get the brace." (Id. ¶ 74.) In 2013, ORI Clinics were often sending pictures to Vision Quest that were of such poor quality that they were difficult to use. (Id. ¶ 94.) For example, in July 2013, MAC sent pictures of two knees that were obviously from different patients, for a bilateral order posed as a single patient of knee braces. (Id. ¶ 95.) A Vision Quest order processing specialist noticed that the photographs were not from the same patient and asked Result's Kate Ross to check with MAC and fix the photographs. (Id.) Ross responded that MAC had reviewed the photographs and they looked good. (Id.) The Vision Quest specialist forwarded the issue to Vision Quest COO Keven Lunau, who said that Vision Quest could not make a good product with pictures from two different patients. (Id. ¶ 96.) Lunau told Beaumarchais that he would send her examples of problematic photos, and that she needed to go around Berry and contact the ORI Clinics directly to get them trained on how to take quality photographs. (Id.) Beaumarchais responded that

6

if Vision Quest in fact went around Berry to contact the clinics directly and get them trained, "we can kiss the business goodbye. You need to understand at this point he will not let us train them." (Id. ¶ 97.) In the end, Vision Quest did not train the ORI Clinics and continued to use low quality photographs to manufacture custom braces. (Id. ¶ 98.)

### B. Procedural History

On November 20, 2020, the Government filed suit against Vision Quest in this Court on behalf of the United States Department of Health and Human Services ("HHS"), including the HHS component for Centers for Medicare & Medicaid Services ("CMS"), which administers the Medicare program. (FAC ¶ 14.) The First Amended Complaint ("FAC") alleges: Count 1: Violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A): Presenting or Causing to Be Presented False or Fraudulent Claims for Payment; Count 2: Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B): Use of False Records or Statements Material to False or Fraudulent Claims; Count 3: Unjust Enrichment; and Count 4: Payment by Mistake.

Defendant now moves to transfer the case to the Central District of California.

## III. DISCUSSION

### A. Section 1404(a) Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997). When considering a motion to transfer, the Court must consider three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Id. at 691. However, "such determinations require a case-by-case evaluation of the particular circumstances at hand." Id.

### B. Whether Venue Is Proper in the Central District of California

The False Claims Act ("FCA") contains a broad venue provision. It states: "Any [FCA action] may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). As the parties agree, venue is proper in both the District of Minnesota and the Central District of California, because

8

Vision Quest transacts business in both forums. See, e.g., United States ex rel. Sandager v. Dell Mktg., L.P., 872 F. Supp. 2d 801, 806 (D. Minn. 2012).

### C.     Convenience of the Parties

The Court concludes that the convenience of the parties weighs heavily in favor of transfer. The Government fails to show that it would be inconvenienced by transfer. It cites cases in which Government investigative agents' or relators' inconvenience is considered by the Court, but, here, the Government offers no evidence of the location of the agents, and there is no relator. Instead, the Government relies on the extensive work put into the case by the Minnesota U.S. Attorney's Office. The convenience of a party's counsel is not a relevant consideration. See, e.g., Nelson v. Soo Line R. Co., 58 F. Supp. 2d 1023, 1027 (D. Minn. 1999) ("[I]t is axiomatic that convenience to plaintiff's counsel is not a factor to be considered in deciding the propriety of transfer.") (citation omitted). Moreover, the Government has a U.S. Attorney's Office in the Central District of California. In any case, Government counsel has demonstrated its ability for counsel to travel to California in connection with this investigation and to utilize U.S. Attorneys' Offices in other Districts in connection with this investigation. (See Schatmeier Supp. Decl. ¶¶ 2-3; Schatmeier Supp. Decl., Ex. A.)

On the other hand, Defendant would be severely inconvenienced by venue in this District. It has no office or employees with relevant knowledge in Minnesota. (Knape Decl. ¶ 6.) The crux of the case will depend on Defendant's intent and knowledge and many material witnesses are Defendant's employees, who will have to relocate to Minnesota at Defendant's expense for a trial. Defendant will "incur expenses for airfare, meals and lodging, and losses in productivity from time spent away from work" as well as "personal costs associated with being away from work, family, and community" if this case is litigated in Minnesota. In re: Apple, Inc., 602 F.3d 909, 913 (8th Cir. 2010).

### D. Convenience of the Witnesses

When analyzing the convenience of the witnesses factor, "[t]he focus is on non-party witnesses since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC, 124 F. Supp. 3d 878, 885–86 (D. Minn. 2015) (quotation omitted). The Court analyzes the "number, location, and importance of essential party and non-party witnesses." KGM Contractors, Inc. v. Heavy Haulers, Inc., Case No. 16–CV–3638 (JNE/LIB), 2017 WL 2437239, at *4 (D. Minn. Jun. 5, 2017).

The convenience of the witnesses weighs in favor of transfer. The important witnesses in this case all live or regularly work in or near the Central District of California, apart from Podell, who lives and works in New York and New Jersey. (See Knape Decl. ¶¶ 5, 7.) The only four Minnesota witnesses cited by the Government are all associated with one ORI Clinic in Minnesota that ceased doing business with Berry in 2015 and ceased operations altogether in 2017. (Jeffrey Lavell, Joseph Biernat, Nancy Moyer, Manli Jiang) (Boschee Decl., Ex. A ¶¶ 6-9.) There is no indication that the Minnesota clinic had a more substantial relationship with Defendant than the many other clinics referenced in the FAC. These four Minnesota witnesses have relevant information, but not uniquely relevant information; the Government cites other ORI Clinic doctors, chiropractors, and employees from across the country, including southern California, with similar knowledge.

The Court acknowledges the nationwide subpoena power under the FCA, see 31 U.S.C. § 3731(a); however, the power to subpoena witnesses from anywhere in the nation does not erase the substantial inconvenience and expense of litigating a case in a venue that is inconvenient for every key witness and has little connection to the lawsuit. The material allegations related to Vision Quest's

liability occurred in or near the Central District of California: Vision Quest's negotiation of sales representative agreements with Berry, Vision Quest's payment of commissions, Vision Quest's manufacture of custom braces, the sale of knee braces, the shipment of braces to ORI Clinics, Vision Quest's communications with Berry and Ross, and the documentation of Podell's discounts.

The Court further notes that key documents are likely located in or near the Central District of California, where Vision Quest, Berry, and Ross store their documents and where the relevant conduct occurred. See In re Apple, Inc., 602 F.3d at 914 ("While electronic filing may lessen the inconvenience of document handling, if the need arises to refer to original documents or evidence in the litigation, [the forum where the originals are located] would prove more convenient."). The Government's collection of key documents in a repository in Minnesota does not change this analysis because "[a] plaintiff may not defeat a motion to transfer by shipping relevant documents to local counsel in its chosen venue." Id.

### E. Interests of Justice

When analyzing the interests of justice, the Court considers:

(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

Terra Int'l, 119 F.3d at 696.

### 1. Judicial Economy

This case has not yet progressed far in this Court, so there will be no waste of judicial resources by transferring the matter to the Central District of California.

### 2. Plaintiff's Choice of Forum

As the plaintiff, the Government's choice of forum is entitled to deference. However, because the Government is a resident of every district and the relevant events have only a minor connection to Minnesota, this factor does not weigh heavily. See, e.g., E.E.O.C. v. FedEx Ground Package Sys., Inc., No. CIV.A. WMN-14-3081, 2015 WL 790500, at *1 (D. Md. Feb. 24, 2015) (holding that, although "the government's choice of venue is still entitled to some deference," "[t]hat weight is lessened" when the plaintiff is a government agency as opposed to "a corporation or natural person" with a more "personal interest" in the forum) (citations omitted); United States v. Nature's Farm Prod., Inc., No. 00CIV.

6593(SHS), 2004 WL 1077968, at *6 (S.D.N.Y. May 13, 2004) ("[T]he federal government [] is no more a resident of the Southern District of New York than it is of the Northern District of California. Because the United States government can adequately litigate in multiple fora, while its choice [of forum] is properly granted significant weight, it is not a choice that deserves the same level of deference as does a choice by a plaintiff to bring an action in her home district.") (citation omitted).

### 3. Comparative Costs to the Parties of Litigating in Each Forum

It will cost Vision Quest far more to litigate in Minnesota than in California, where it, its employees, and its documents are located. On the other hand, because the Government has a U.S. Attorney's Office in the Central District of California, it will not greatly burden the Government to litigate in California as opposed to Minnesota.

### 4. Each Party's Ability to Enforce a Judgment

This factor is neutral, as the Government can enforce a judgment entered in either District.

### 5. Obstacles to a Fair Trial

The parties agree that this factor is neutral.

14

### 6. Conflict of Law Issues

This factor is neutral because federal law applies.

### 7. Advantages of Having a Local Court Determine Questions of Local Law

This is neutral because federal law applies.

### F. Conclusion

Although a plaintiff's choice of forum is entitled to deference, here, the Government is equally a resident of all federal districts; Defendant has little connection to Minnesota; there are no key witnesses located in Minnesota; and the bulk of the underlying conduct occurred in or near the Central District of California. Weighing all factors, the Court grants Defendant's motion to transfer to the Central District of California. See Nature's Farm Prod., Inc., 2004 WL 1077968, at *6 (granting FCA defendant's motion to transfer out of Government's chosen forum when forum had little connection to the lawsuit).

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Vision Quest Industries, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [Docket No. 17] is **GRANTED**.

2. This case is transferred to the United States District Court for the Central District of California.


Dated: May 26, 2021         s/Michael J. Davis
                            Michael J. Davis
                            United States District Court